## In re DRAPER.

(District Court, N. D. New York. February 27, 1914.)

BANKRUPTCY (§ 143*) — PROPERTY BELONGING TO ESTATE — LIFE INSURANCE POLICY—"CASH SURRENDER VALUE."

    Bankr. Act July 1, 1898, c. 541, § 70a, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451), providing that life insurance policies belonging to a bankrupt, having a cash surrender value, shall belong to his estate in bankruptcy unless redeemed, is not confined to policies in which the cash sur-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

render value is expressly stated, but includes those having a cash surrender value by the concession or practice of the company issuing them; and hence a policy on a bankrupt's life payable to his wife if she survived him, otherwise to his estate or any designated beneficiary, he having the absolute right to change the beneficiary at any time, and which, though having no cash surrender value, gave him the right, if he lived beyond a stated term, to receive the value of the policy in cash or paid-up insurance, was property which passed to the bankrupt's trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194, 201, 202, 213–217, 223, 224; Dec. Dig. § 143.*]

In Bankruptcy. In the matter of bankruptcy proceedings of John N. Draper. Petition to review a referee's decision holding that a certain insurance policy on the bankrupt's life passed to the trustee as an asset of the estate. Affirmed.

Arthur T. Johnson, of Gouverneur, N. Y., for bankrupt.
D. M. Hazelton, of Gouverneur, N. Y., for trustee.

RAY, District Judge. February 8, 1899, John N. Draper, now bankrupt, insured his life in the New York Life Insurance Company in the sum of $2,500, under policy No. 922,206, and which policy states that:

"New York Life Insurance Company by this policy of insurance agrees to pay twenty-five hundred dollars to Nellie C., wife of the insured, or, in the event of her prior death to the insured's executors, administrators or assigns, or to such other beneficiary as may be designated by the insured as hereinafter provided, at the home office of the company, in the city of New York, immediately upon receipt and approval of proofs of the death of John N. Draper, of Gouverneur, in the county of St. Lawrence, state of New York (herein called the insured)."

By express provision it is incontestable after being in force one full year provided the premiums have been duly paid, and:

"The contract is made in consideration of the written application of the insured, which is a part of this contract, and in further consideration of the annual premium of fifty-seven dollars and thirty-eight cents to be paid in advance, and of the payment of a like sum on the 8th day of February in every year thereafter during the continuation of this policy."

It is a part of the policy that:

"The insured may at any time during the continuance of this policy, provided the policy is not then assigned, change the beneficiary or beneficiaries by written notice to the company, at its home office, accompanied by this policy; such change to take effect on the indorsement of same on the policy of the company."

The insured, John N. Draper, paid the premiums down to the time of his bankruptcy, and such policy had not been assigned. Neither had the beneficiary been changed. The contract also contains the following "special advantages":

"Guarantees at End of Accumulation Period.

"This policy participates in surplus as hereinafter provided, but no dividend shall be apportioned to it until the end of its accumulation period, which is twenty years, and ends on the eighth day of February in the year nineteen

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

hundred and nineteen. If the insured is then living, and if the premiums have been duly paid to that date, and not otherwise,

"The company will apportion a dividend to the insured, who shall have the option of continuing, or discontinuing, this policy under one of the following

"Eight Accumulation Benefits:

"(1) Receive the dividend, in cash, and continue this policy at the same premium rate; or

"(2) Receive the dividend, converted into an annual income for life, and continue this policy at the same premium rate; or

"(3) Receive the dividend, converted into additional paid-up insurance, subject to evidence of sound health satisfactory to the company, and continue this policy at the same premium rate; or

"(4) Receive the dividend, in cash, and receive paid-up insurance of twelve hundred and seven dollars, and discontinue this policy (evidence of sound health will not be required); or

"(5) Receive the dividend, in cash, and receive paid-up insurance of seven hundred and sixty-seven dollars, and receive an annual income for life of twenty-three and 1/100 dollars, and discontinue this policy (evidence of sound health will not be required); or

"(6) Receive the entire cash value, as stated below, in cash, and discontinue this policy; or

"(7) Receive the entire cash value, as stated below, converted into an annual income for life, and discontinue this policy; or

"(8) Receive the entire cash value, as stated below, converted into paid-up insurance, and discontinue this policy (evidence of sound health will not be required).

"The company guarantees that the entire cash value of this policy at the end of the accumulation period shall be seven hundred and sixty-seven dollars, and in addition thereto the cash dividend then apportioned by the company."

By other provisions the policy cannot be forfeited after having been in force full three years whether further premiums are paid or not.

It is evident that the beneficiary named, Nellie C., has no right or interest in the policy which cannot be terminated by the action of the insured. No present "cash surrender value" is provided for in the policy, and no proof was given that it has any at this time. It has such a value at the end of 20 years; that is, 5 years hence. It has considerable value, of course. If Nellie C. should die prior to the death of John N. Draper, then the policy is payable to his executors, etc. If she does not, then at the end of 20 years Draper may take certain benefits, etc., and he at any time may change the beneficiary.

Section 70a of the bankruptcy act relating to the "title to property" provides, amongst other things, as follows:

"Provided, that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets."

In Hiscock, Trustee, etc., v. Mertens, 205 U. S. 202, 27 Sup. Ct. 488, 51 L. Ed. 771, it was held:

"The provisions in section 70a of the Bankruptcy Act of 1898 that a bankrupt, having policies of life insurance payable to himself and which have a cash surrender value, may pay the trustee such value and thereafter hold the

policies free from the claims of creditors, are not confined to policies in which the cash surrender value is expressly stated, but permit the redemption by the bankrupt of policies having a cash surrender value by the concession or practice of the company issuing the same."

In Matter of White, 23 Am. Bankr. Rep. 90, 174 Fed. 333, 98 C. C. A. 205, 26 L. R. A. (N. S.) 451, the policy of insurance was payable, as here, to the wife, if she survived him. If she did not, it was payable, as here, to his estate. Then if, after payment of two annual premiums, the policy lapsed for nonpayment of premiums, the company would, on the decease of the insured, issue a policy of paid-up insurance for a certain amount to the beneficiary. Here there is a similar "special advantage" not necessary to recite.

But the case now before this court is controlled by In re Hettling (C. C. A. 2d Circuit) 175 Fed. 65, 99 C. C. A. 87. The syllabus is as follows:

"A policy of insurance on the life of a bankrupt, payable to his wife if she survives him, otherwise to his estate or any designated beneficiary, and which, while having no cash surrender value, gives him the right to change the beneficiary at any time and the privilege of several options if he lives beyond a stated term, among which are to receive its then value in cash or paid-up insurance, is property of the bankrupt which passes to his trustee."

The court said:

"The policy has no cash surrender value, but the insured is given the power to change the beneficiary at any time. If he survive his wife the policy is payable, not to her, but to his estate; and, if he live beyond the term of 20 years, he is given several options, some of which are: To receive any accumulated dividends in cash or the entire cash value of the property, or to receive the entire cash value converted into an annual income for life. These are property rights, as pointed out in our decision in Re White (handed down herewith) 174 Fed. 333 (98 C. C. A. 205, 26 L. R. A. [N. S.] 451), that pass to the trustee under section 70a (5) of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451])."

This policy in its terms is the same as that in the Hettling Case, supra.

It follows that there will be an order affirming the order of the referee.